Olivia GRAVES, Plaintiff/Relator,

v.

PLAZA MEDICAL CENTERS, CORP., Humana, Inc., and Michael Cavanugh, Defendants.

Case Number: 10–23382–CIV–MORENO

United States District Court, S.D. Florida, Miami Division.

Signed 03/20/2017

Daniel S. Gelber, Adam Michael Schachter, Gelber Schachter & Greenberg, P.A., David E. Werner, Jonathan Edward Freidin, Philip Freidin, Freidin Brown, P.A., Douglas Fredric Eaton, William Gregg Wolk, Eaton & Wolk, P.L., Miami, FL, David E. Farber, Pro Hac Vice, Faith Elizabeth Gay, Quinn Amanuel Urquhart & Sullivan, LLP, New York, NY, David C. Kramer, Pro Hac Vice, Jon C. Cederberg, Pro Hac Vice, Valerie Roddy, Pro Hac Vice, Quinn Emanuel Urquhart & Sullivan, LLP, Los Angeles, CA, Justin S. Brooks, Pro Hac Vice, Guttman, Buschner & Brooks PLLC, Philadelphia, PA, Reuben A. Guttman, Pro Hac Vice, Guttman, Buschner & Brooks, PLLC, Sam S. Sheldon, Pro Hac Vice, Quinn Emanuel Urquhart & Sullivan, Washington, DC, Mark Alan Lavine, United States Attorney's Office, West Palm Beach, FL, for Plaintiff/Relator.

Steven Murray Weinger, Helena Marie Tetzeli, Kurzban Kurzban Weinger & Tetzeli, Ryan C. Zagare, Miami–Dade County Attorney's Office, Robert Donald Wike Landon, III., Todd Rapp Friedman, Kenny Nachwalter, P.A., Miami, FL, David Deaton, Pro Hac Vice, Stephen M. Sullivan, Pro Hac Vice, O'Melveny & Myers, LLP, Los Angeles, CA, David J. Leviss, Pro Hac Vice, K. Lee Blalack, II, Pro Hac Vice, Kevin D. Feder, Pro Hac Vice, Scott Hammack, Pro Hac Vice, William T. Buffaloe, Pro Hac Vice, O'Melveny & Myers, LLP, Washington, DC, for Defendants.

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANTS PLAZA MEDICAL CENTERS, CORP.'S AND MICHAEL CAVANAUGH'S MOTIONS FOR SUMMARY JUDGMENT

FEDERICO A. MORENO, UNITED STATES DISTRICT JUDGE

THE MATTER was referred to the Honorable John J. O'Sullivan, United States Magistrate Judge for a Report and Recommendation on Defendant Michael Cavanaugh's Motion for Summary Judgment (**D.E. 622**), filed on **October 27, 2016**; Defendant Plaza Medical Centers, Corp.'s Motion for Summary Judgment (**D.E. 624**), filed on **October 27, 2016**; and Relator's Motion to Strike (**D.E. 651**), filed on **November 14, 2016**. The Magistrate Judge

filed a Report and Recommendation (**D.E. 812**) on **February 27, 2017**. The Court has reviewed the entire file and record. The Court has made a *de novo* review of the issues that the Magistrate Judge's Report and Recommendation present, and being otherwise fully advised in the premises, it is

ADJUDGED that United States Magistrate Judge John O'Sullivan's Report and Recommendation is **AFFIRMED** and **ADOPTED**. Accordingly, it is

ADJUDGED that Defendant Michael Cavanaugh's Motion for Summary Judgment is DENIED. It is further

ADJUDGED that Defendant Plaza Medical Centers, Corp.'s Motion for Summary Judgment is DENIED. It is further

ADJUDGED that Relator's Motion to Strike is DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 20th of March 2017.

## REPORT AND RECOMMENDATION

JOHN J. O'SULLIVAN, UNITED STATES MAGISTRATE JUDGE

THIS CAUSE comes before the Court on the Defendant Dr. Michael Cavanaugh's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 622, 10/27/16); Defendant Plaza Medical Centers, Corp.'s Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 624, 10/27/17), and the relator's Motion to Strike Declaration of Angel Spencer (DE# 651, 11/14/16). Pursuant to 28 U.S.C. § 636 and Magistrate Judge Rule 1(C), the Honorable Federico A. Moreno referred this matter to take all necessary and proper action as required by law with respect to any and all pretrial matters. (DE# 134, 1/28/15). Having reviewed the defendants' motions, the relator's omnibus response, the defendants' replies, the defendants' supplemental notice of filing materials in support of their respective motions for summary judgment and in response to the relator's counter-statements/additional material facts, the defendants' response/counter-statements to relator's counter statement and rebuttals to relator's additional material facts,[1] and the defendants' notice of filing supplemental authority, as well as the evidence in the record, the undersigned recommends that the Defendant Dr. Michael Cavanaugh's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 622, 10/27/16) and Defendant Plaza Medical Centers, Corp.'s Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 624, 10/27/17) be DENIED for the reasons stated herein. Additionally, this Court should **DENY as moot** the relator's Motion to Strike Declaration of Angel Spencer (DE# 651, 11/14/16).[2]

## INTRODUCTION

The defendants seek summary judgment on the relator's claims based on the False Claims Act (2006) ("FCA") and as amended by the Fraud Enforcement Recovery Act of 2009 ("FERA") in the Fourth Amended Complaint. (DE# 382) The rela-

---

1. The defendants ask the Court to deem their material facts admitted on the ground that the relator failed to cite record evidence to support her disputed facts and additional material facts. The undersigned finds that the relator provided sufficient citation to record evidence to support her disputed facts and additional material facts. Thus, the undersigned recommends that this Court deny the defendants' request to deem their material facts admitted.

2. The undersigned considered the Declaration of Angel Spencer that was filed in support of the defendants' motions for summary judgment and the evidence cited therein. Because the undersigned is recommending the denial of the defendants' motion for summary judgment even after considering Mr. Spencer's declaration, the relator's motion to strike the declaration should be denied as moot.

tor asserts five counts against the defendants:

Count I: for allegedly "submitting false claims in violation of the [False Claims Act], 31 U.S.C. § 3729(a)(1)(A) ... Post June 7, 2008 claims." (DE# 277, ¶¶ 76–82).

Count III: for allegedly "making, using or causing to be made or used false records material to" a fraudulent claim in violation of 31 U.S.C. § 3729(a)(1)(B) "Post–June 7, 2008 claims." (DE# 277, ¶¶ 89–94).

Count V: for allegedly "submitting false claims in violation of the [False Claims Act], 31 U.S.C. § 3729(a)(1) .... Pre–June 7, 2008." (DE# 277, ¶¶ 101–108).

Count VII: for allegedly "making, using or causing to be made or used false records to get" a fraudulent claim paid by the Government in violation of 31 U.S.C. § 3729(a)(2) "Pre–June 7, 2008 claims." (DE# 277, ¶¶ 115–121).

Count IX: for allegedly "knowingly concealing ... or avoiding ... an obligation to pay the Government in violation of 31 U.S.C. § 3729(a)(1)(G)...." (DE# 277, ¶¶ 128–139).

The defendants seek summary judgment on the ground that the relator has failed to carry her burden in opposition to summary judgment by presenting evidence that creates a genuine issue of material fact regarding the elements of an FCA claim. The defendants argue that the plaintiff cannot show that: the defendants directly submitted false diagnoses to the government; the diagnoses codes were "objectively false;" or the defendants' had knowledge. Additionally, the defendants contend that the relator's claims are barred by the applicable six-year statute of limitations. Finally, the defendants argue that: the reverse false claims (Count IX) for overpayment received before May 20, 2009 would be impermissibly retroactive, time-barred by the statute of limitations; re-

dundant to the FCA claims; claims based on non-MRA sensitive diagnoses that were not submitted or did not result in increased payments cannot create FCA liability; and the applicable regulations do not require the defendants to calculate or return any overpayments.

The relator maintains that the record evidence presents fact questions for a jury to determine whether Dr. Cavanaugh and Plaza Medical Centers recklessly disregarded the truth or falsity of the diagnosis codes that they provided to Humana, Inc., which Humana submitted to the CMS for payment and whether Dr. Cavanaugh and Plaza Medical Centers knowingly failed to remit overpayments due to the false diagnosis codes they provided to Humana that were submitted to CMS. The relator requests the Court to reject the defendants' statute of limitations, redundancy, and retroactivity arguments as it did in prior rulings on the defendants' motions to dismiss.

The motions are ripe for disposition.

## DISCUSSION

### I. Legal Standard

The Court, in reviewing a motion for summary judgment, is guided by the standard set forth in Federal Rule of Civil Procedure 56(a), which states, in relevant part, as follows:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56 (a).

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

that the movant is entitled to judgment as a matter of law. The moving party bears the burden of meeting this standard. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). That is, "[t]he moving party bears the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting Celotex, 477 U.S. at 323, 106 S.Ct. 2548) (internal quotation marks omitted). In assessing whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party. Batey v. Stone, 24 F.3d 1330, 1333 (11th Cir. 1994). Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain. Id. If the record presents factual issues, the Court must deny the motion and proceed to trial. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

## II. Material Issues of Fact Preclude Summary Judgment on Relator's False Claims Act Claims

### A. The False Claims Act

The False Claims Act ("FCA") authorizes private citizens to recover damages on behalf of the United States by filing a qui tam action against a person who

(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval; [or]

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.

Urquilla–Diaz v. Kaplan University, 780 F.3d 1039, 1045 (11th Cir. 2015) (quoting 31 U.S.C. § 3729(a)(1)–(2) (2006)). "Congress amended the [FCA] via the Fraud Enforcement and Recovery Act of 2009 ("FERA")." Id. 1045 n.6 (citing Pub. L. 111–21, 123 Stat. 1617). The amendment replaced the language in subsection (a)(2) "to get a false or fraudulent claim paid or approved by the Government" with "material to a false or fraudulent claim." Id. § 4, 123 Stat. at 1621. The amendment applies retroactively to claims pending for payment on or after June 7, 2008. Id. (citing Hopper v. Solvay Pharm. Inc., 588 F.3d 1318, 1327 n.3 (11th Cir. 2009)).

To establish presentment claims under the False Claims Act ("FCA"), the Relator "must prove three elements: (1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with knowledge that the claim was false." United States ex rel. Walker v. R & F Props. of Lake County, Inc., 433 F.3d 1349, 1355 (11th Cir. 2005). Similarly, to prevail on her false certification claims, the Relator "must prove '(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due.'" Urquilla–Diaz, 780 F.3d 1039, 1045 (11th Cir. 2015) (quoting United States ex rel. Hendow v. University of Phoenix, 461 F.3d 1166, 1174 (9th Cir. 2006)). Knowledge is the requisite scienter for both types of FCA claims. See 31 U.S.C. 3729(1)(a)(A)–(B) (2012); 31 U.S.C. 3729 (a)(1)–(2) (2006) (pre-FERA version of the statute). FCA claims do not require "proof of specific intent to defraud." 42 U.S.C. § 3729(b). "The 'sine qua non of a

False Claims Act violation' is the submission of a false claim to the government." Id. (quoting United States ex rel. Clausen v. Lab. Corp. of America, 290 F.3d 1301, 1311 (11th Cir. 2002))..

### 1. Submission of False Claim to the Government

■ The defendants seek summary judgment on Count V on the ground that the relator cannot establish that the defendants directly submitted their claims to the Government pursuant to 31 U.S.C. § 3729 (a)(1) (pre-FERA). The defendants rely on United States ex rel. Atkins v. McInteer, 345 F.Supp.2d 1302, 1304 (N.D. Ala. 2004), rev'd on other grounds, 470 F.3d 1350 (11th Cir. 2006), to support their argument that 31 U.S.C. § 3729 (a)(1) required that a "defendant itself directly submit" a false claim "and not merely to a non-government entity or intermediary, even if that entity later submitted the claim for payment to the government." Plaza Medical Center's Motion at 5 (DE# 624, 10/27/16).

The defendants acknowledge that the undersigned previously noted that the district court decision in Atkins has been criticized. Plaza Medical Center's Motion at 5 n.2 (DE# 624, 10/27/16) (citing Report and Recommendation ("R&R") at 23 (DE# 153)). Yet, the defendants maintain that Atkins has never been reversed or abrogated by the Eleventh Circuit. Id. As the undersigned previously explained, "the Eleventh Circuit affirmed the district court decision [in Atkins] on other grounds and did not address whether the submission of a claim to a non-governmental entity that later submitted the claim to the government could sustain a cause of action under Sub-section 3729(a)(1)." R&R at 23. "The same court … later recognized that [Atkins] may be inconsistent with the False Claims Act and that liability 'may therefore attach if a fraudulent claim is presented to a non-governmental interme-

diary, and the intermediary subsequently presents the claim to an officer or employee of the United States government.' " United States v. All Children's Health Sys., Inc., 2013 WL 6054803, at *7 & n.9 (M.D. Fla. Nov. 15, 2013)(citing United States ex rel. Brunson v. Narrows Health & Wellness, LLC, 469 F.Supp.2d 1048, 1053 (N.D. Ala. 2006)).

Unlike Atkins, the defendants in the present case provided false diagnosis codes to their co-defendant, Humana, Inc., the Medicare Advantage Organization ("MAO") that submitted the claims directly to the government, i.e. CMS, for payment. See United States ex rel. Luther v. Consol. Indus., Inc., 720 F.Supp. 919, 921–22 (N.D. Ala 1989) (finding defendant liable for submitting false claims "even though false claims in this case were presented [by it] to Teledyne, and not the government directly"). The Court should deny the defendants' motion for summary judgment on the ground that their submissions to Humana in turn were submitted to the government via CMS.

### 2. Falsity

"Medicare claims may be false if they claim reimbursement for services or costs that either are not reimbursable or were not rendered as claimed." Walker, 433 F.3d at 1356. Additionally, costs for non-existent diseases or conditions are not reimbursable. See, e.g., United States v. Crumb, 2016 WL 4480690, at *14–15, 25 (S.D. Ala. Aug. 24, 2016) (finding that the government adequately plead falsity based on presentation of false diagnosis codes to the government in order to obtain reimbursement for conditions patients did not have).

#### a. Admitted Unsupported Diagnoses

■ Dr. Cavanaugh conceded that many patients for whom he submitted claims did not have the conditions or diseases that he diagnosed. When the relator challenged

certain diagnoses during his deposition, Dr. Cavanaugh agreed that they were "just errors, just flat erroneous errors" and not supported by medical evidence. See Relator's Additional Material Facts Regarding Dr. Cavanaugh Motion ("CAMF"), ¶ 2. Dr. Cavanaugh diagnosed Patient C-5 as diabetic but testified that she does not have diabetes and had no markers of diabetes. Id. In response to an interrogatory questioning the support of 144 diagnoses that the relator challenged, Dr. Cavanaugh admitted that nearly half (66 of 139 diagnoses or 47%) were not supported on the initial date of service the condition was diagnosed. Id. On May 15, 2015, after this action was filed, Plaza Medical Centers submitted a Code Deletion Spreadsheet to Humana that identified 323 diagnostic codes (relating to 18 of the 28 patients identified in the relator's original complaint) that were not supported by the medical records and should not have been submitted to Humana, and ultimately CMS, for reimbursement. Alternative Material Facts re Plaza Medical Centers ¶ 1. Even Humana acknowledged that the relator has challenged over 9,200 risk-adjusting codes of an actual 74,619 risk-adjusting codes that Plaza submitted to Humana during the 2006–2011 timeframe, which yields a 12.4% error rate. See Declaration of Mary Beth Edwards (DE# 634–18) ¶¶ 13(b), 17.

The defendants' reliance on United States v. AseraCare, 176 F.Supp.3d 1282, 1286 (N.D. Ala. 2016), appeal docketed No. 16–13004 (11th Cir.), is misplaced. In AseraCare, the district court held that "contradiction based on clinical judgment or opinion alone cannot constitute falsity under the FCA as a matter of law." Id. The defendants argue that the relator cannot establish that "even one of the challenged diagnoses in this case is objectively false" because "conflicting views of physicians as to whether medical records support a diagnosis do not equate to falsity of the diagno-

sis or medical opinion." Motion at 12–13, 15 (DE# 622).

AseraCare is factually distinguishable. In the present case, the defendants have admitted that many of the challenged codes are unsupported and that the patient did not have the coded condition, which means there are "no conflicting views of physicians" at all, and there are material disputes of fact regarding whether the defendants exercised "clinical judgment" at all. Id. Additionally, in AseraCare, the government "backed itself into a corner regarding its proof of falsity" because the case was bifurcated and the government previously represented in answer to an interrogatory that the "only evidence it ha[d] to prove falsity ... is [its expert] Dr. Liao's testimony." United States v. AseraCare Inc., 153 F.Supp.3d 1372, 1379–80 (N.D. Ala. 2015); AseraCare, 176 F.Supp.3d at 1285–86 n.4–5. The district court refused to allow the government to offer evidence of scienter in the falsity stage (Phase I of the trial) including testimony that defendants admitted patients to hospice who nurses did not think were eligible. Id. at 1380.

The defendants also rely on the recent decision in United States ex rel. Polukoff v. St. Mark's Hospital, 2017 WL 237615 (D. Utah, January 19, 2017), which they filed as supplemental authority. (DE# 795, 2/13/17). In Polukoff, the district court dismissed the relator's complaint and denied the relator leave to amend. The Polukoff court determined that the relator could not "identify an objectively false representation by any of the defendants" based on the relator's assertion that the defendants falsely represented to the Government that a patent forem ovulem ("PFO") closure of an opening in the chamber of the heart was medically necessary when the patient did not meet American Heart Association/American Stroke Association

("AHA/ASA") recommendations that a PFO closure should not be performed absent a prior stroke or the presence of specified conditions. Id. at *1–2. In rejecting evidence of objective falsehood, the Polukoff court determined that the relator's "allegations are based on subjective medical opinions that cannot be proven to be objectively false." Id. at *7. The relator in Polukoff conceded that Medicare "has not provided specific guidance on when it will or will not pay for the [PFO closure] procedure." Id. at *8. The issue was whether the defendant's representation that the PFO closures were medically necessary was false.

In the present case, the relator challenges diagnoses for conditions that did not exist at the time they were made. The defendants have admitted to many diagnostic code errors. Whether these errors were made to achieve higher MRA scores rather than simple negligence presents a material issue of fact. Unlike AseraCare, the present action is not bifurcated and the relator has not limited her proof to expert testimony alone. The defendants' admissions as to the falsity of some of the claims as well as the relator's evidence of scienter create issues of material fact that preclude summary judgment. The Court should deny the defendant's motion for summary judgment on the defendants' assertion that the erroneous diagnostic codes are not objectively false under the FCA.

### b. Whether Additional Diagnoses Were False Is Disputed

 Dr. Cavanaugh's exercise of his clinical judgment does not preclude FCA liability for the diagnoses that he has not admitted were unsupported. Extrinsic evidence that a specific methodology was used to obtain a predetermined, desired result (i.e. increased MRA scores) may be used to prove the falsity of diagnoses at the summary judgment stage. See United States ex rel. Jones v. Brigham Women's Hosp., 678 F.3d 72, 87–88 (1st Cir. 2012) (finding a material dispute of fact as to whether data used to qualify for a federal grant was falsified by implementing a protocol to achieve a desired result).

Humana's Medical Director, Jansen Diener, testified that incorrect diagnoses by a physician can be fraudulent if there is contradictory information in the medical record, for example, "[i]f the physician diagnosed chronic obstructive pulmonary disease ("COPD"), but had completely normal studies in the chart or it showed some other kind of condition that was responsible for the pulmonary conditions." Relator's Counter–Statement to Dr. Cavanaugh's Statement of Material Facts ("CCS") ¶ 18.

The relator's expert, Dr. Weine, testified that Dr. Cavanaugh diagnosed many patients with certain conditions, for instance COPD and diabetes, without testing and without treating them. CAMF ¶¶ 12–14; Werner Decl., Ex. 15 (Gary R. Weine, M.D. Depo.) 356:18–24 through 357:1–4 (DE# 654-8)(Sealed). Material issues of fact exist as to whether the diagnoses that are refuted by the medical record were a valid exercise of Dr. Cavanaugh's clinical judgment or made to achieve a desired result, that is, higher MRA scores. Summary judgment should be denied on this ground.

### 3. Knowledge under the False Claims Act

Under the FCA, "knowing" and "knowingly" are defined to mean a person who (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information. Urquilla–Diaz, 780 F.3d at 1058 (citing 31 U.S.C. 3729 (b) (2006) which used nearly identical language as the post-FERA version of the statute: 31 U.S.C. 3729(b) (2012)). "Although proof of

a 'specific intent to defraud' is not required, ... the statute's language makes plain that liability does not attach to innocent mistakes or simple negligence." Id. (quoting 31 U.S.C. 3729 (b) (2006) and citing United States v. King-Vassel, 728 F.3d 707, 712 (7th Cir. 2013)). "Actual knowledge" requires "subjective" awareness of the falsity of the claim, record, or statement. See, e.g. United States ex rel. Folliard v. Govplace, 930 F.Supp.2d 123, 130 (D.D.C. 2013) (quoting K & R Ltd. Partnership v. Mass. Hous. Fin. Agency, 456 F.Supp.2d 46, 61 (D.D.C. 2006), aff'd, 764 F.3d 19 (D.C. Cir. 2014)).

In the Eleventh Circuit, "reckless disregard" requires a showing of an "aggravated form of gross negligence." Urquilla-Diaz, 780 F.3d at 1058. "Deliberate ignorance" requires an even higher showing and "plainly demands even more culpability than that needed to constitute reckless disregard." Id. at 1058 n.15. The Eleventh Circuit has explained that "Congress did not intend to turn the False Claims Act, a law designed to punish and deter fraud, ... 'into a vehicle either 'punish[ing] honest mistakes or incorrect claims submitted through mere negligence' or imposing 'a burdensome obligation' on government contractors rather than a 'limited duty to inquire.'" Id. (quoting United States v. Sci. Applications Int'l Corp., 626 F.3d 1257, 1274 (D.C. Cir. 2010))(quoting S. Rep. 99–345, at 6, 19, 1986 U.S.C.C.A.N. 5266, 5271, 5284).

Because the record evidence does not reveal that the defendants' had actual knowledge, the relator must prove knowledge by showing that the defendants acted with reckless disregard or deliberate ignorance of the falsity of the diagnosis codes that the defendants provided to Humana for submission to CMS.

### a. Whether the Defendants Acted with Reckless Disregard of the Falsity of the Claims They Submitted to Humana for Submission to CMS Presents a Material Disputed Fact

■ "Deliberate indifference and reckless disregard can be means of inferring actual knowledge in the absence of direct evidence." Siebert v. Gene Sec. Network, Inc., 75 F.Supp.3d 1108, 1116 (N.D. Cal. 2014). Dr. Cavanaugh's knowledge of falsity is properly imputed to Plaza Medical Centers. See Grand Union Co. v. United States, 696 F.2d 888 (11th Cir. 1983). In Grand Union, the Eleventh Circuit determined that "in cases brought under the [FCA], the knowledge of an employee is imputed to the corporation when the employee acts for the benefit of the corporation and within the scope of his employment." Id. at 891.

The relator has submitted record evidence that creates material fact questions for a jury to determine whether the defendants recklessly disregarded the falsity of the diagnosis codes they provided to Humana for submission to CMS for payment. Evidence in the record reveals that the focus of the defendants' medical practice was to increase the Medical Risk Adjustment ["MRA"] score of Medicare Advantage patients. CAMF ¶ 5 (citing Werner Decl., Ex. 53). "[Dr.] Cavanaugh ordered tests that did not support diagnoses, ... continued to use the same diagnoses codes, and then he would order tests again on the same patient that did not confirm the diagnosis, and actually refuted the diagnosis...." Werner Decl. Ex. 15 (Weine Depo.) at 354:1 through 357:4. Dr. Cavanaugh's staff told Plaza Medical Centers' former office manager, Marilyn Feldman, that "Olivia isn't coding enough" and the relator questioned whether Ms. Feldman was asking the relator "to put codes [in] that are not correct or ... dictate a diag-

nosis that isn't true." Id., Ex. 14 at 77:12–25, 78:23–79:8. Dr. Cavanaugh's staff also altered the relator's diagnoses, id. at 88:19–90:3, and placed sheets in patient files suggesting certain diagnoses for the relator to code, which the relator did not follow. Id. at 78:23–80:11.

The focus on the defendants' MRA scores and reimbursement is also evident in Dr. Cavanaugh's communications with his staff and Humana: Dr. Cavanaugh's response "Good, I am trying to buy that house based on MRA scores" when he learned that his MRA scores were actually higher than what he thought in correspondence in 2009 with Humana (CAMF at ¶ 5); in June 2007, Dr. Cavanaugh expressed excitement to Humana executives over the "good MRA scores" of a new patient who was a former NFL football player (Id.); in January 2009, Dr. Cavanaugh told Humana that high MRA scores made his business partner Spencer Angel "very happy" and that he hoped to "make [Angel's] month" upon receipt of high scores from Humana. Humana responded it "will have good news for him" (Id.); and Dr. Cavanaugh also told Humana he would administer spirometry testing to every patient to increase MRA scores "enough to pay off the [spirometry] machines in triples" (Id.).

Dr. Cavanaugh and Plaza Medical Centers knew that submitting false risk-adjusting data would increase their MRA scores, and their payment from the government. Although the defendants may contend that these actions are part of a fiscally sound medical practice, all inferences are made in favor of the non-movant at the summary judgment stage. See Bush v. Houston County Comm'n, 414 Fed. Appx. 264, 266 (11th Cir. 2011) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1193 (11th Cir. 2004) (citation omitted); see Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

### b. Employees Reported Unsupported Diagnoses to the Defendants

The relator contends that she and two other employees of Plaza Medical Centers were terminated shortly after they accused Dr. Cavanaugh and/or Plaza Medical Centers of making unsupported diagnoses during their employment. In April 2010, the relator complained that diagnoses were improperly placed in patient charts and was promptly terminated in June 2010. CCS ¶ 19.

The defendants dispute the evidence claiming that the relator improperly relies on Dr. Cavanaugh's deposition testimony for her claim that Dr. Joseph Arena, a physician at PMC Hillsboro, complained to Dr. Cavanaugh (the medical director and part-owner of the facility) that patient codes had been falsified; Dr. Arena was terminated in 2013. Id.; Dr. Cavanaugh Reply at 8 n.4. They also contend that the relator misrepresents the statement "I don't do fraud" made by Marilyn Feldman, a former office manager at Plaza Medical Centers, to Plaza Medical Centers' co-owner Spencer Angel because it had nothing to do with coding or diagnosing patients, but "it had more to do with someone from outside that was doing something." Defendants' Notice of Filing, Feldman Depo at pp. 126–129 (DE# 673, 12/1/16). After repeated questions about the context of her remark "I don't do fraud," Ms. Feldman qualified her answers and said "It's very hazy in my mind right now...." Defendants' Notice of Filing, Feldman Depo at pp 127:18–25; 128: 14–25; 129:1–6 (DE# 673, 12/1/16). Ms. Feldman learned

that a patient diagnosed with diabetes and prescribed insulin was not diabetic and had other employees state that "it happens·a lot." CCS ¶ 14. The relator claims.that after Ms. Feldman made her "I don't do fraud statement" to Mr. Angel, Ms. Feld-man was terminated with one year's sever-ance. CCS ¶ 19. Credibility issues and weight of evidence are for the province of the jury at trial, not·the Court on a motion for summary judgment.

### c. Humana's Audits

The defendants contend that "the undis-puted fact that Humana's audits ... gen-erally resulted in good reviews ·and no findings of any fraud is evidence of lack of knowledge of fraud." Dr. Cavanaugh's Re-ply at 8. The defendants also rely on the "intensive, month's long formal investiga-tion conducted by Humana, its outside counsel, and various Humana divisions,. in coordination with the U.S. Attorney's Of-fice that also did not reveal any fraud by Dr. Cavanaugh and PMC." Id.

The relator argues that "Humana's fail-ure to take corrective action.against [the defendants] as a result of its 'audits' has no bearing on [the defendants'] scienter." Relator's Omnibus Response at 13. The relator maintains that Humana's oversight of the defendants lacked measures to actu-ally detect fraud. Neither Humana's Medi-care Risk Adjustment ("MRA") Reviews nor Humana's Provider Data Validation ("PDV") Reviews were designed to detect fraud. Id. (citing Werner Decl., Ex. 61, Ex. 24 at 24:8–14, 58:8–12; Ex. 25 at 89:25–90:14; Ex, 62 at 66:15–17). Additionally, Humana's audits of Plaza Medical Centers were not as good as the defendants sug-gest. In 2010, Humana validated 65% of the codes submitted from a sampling· of patient files. Relator's Additional ·Material Facts directed toward Plaza Medical· Cen-ters ("PAMF") ¶ 14. In 2011, the number increased to 78%. Id. ¶ 15. Both results were deficient and required Humana to

conduct additional oversight of the defen-dant until the validation rate improved. Id. ¶ 16; Werner Decl. ¶ 37, Ex. 37. The au-dits by Humana revealed the same viola-tions year after year, most notably lack of support· in the medical records for the diagnosed condition (42 of 116 codes inval-id), which resulted in instructions from Humana to "support all diagnoses" and implement "compliance and practice stan-dards." (Id. at ¶ 31).

A reasonable jury, not the Court, should weigh and determine whether the results of ·Humana's audits support the relator's position ·that the defendants' recklessly disregarded the falsity of their diagnoses or support the defendants' position that they lacked knowledge.· See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed:2d 202 (1986).

### d. Defendants' Failure to Review Bills

The defendants maintain that many false diagnoses were caused by. transcrip-tion or. coding errors. Plaza Medical Cen-ters used two different forms to document patient encounters: a hand-written form created by a physician or physician assis-tant and a typed form transcribed after the encounter. A non-physician coder. as-signed ICD–9CM codes to the diagnoses and conditions identified in the transcribed record.of the encounter. Werner Decl., Ex. 69 at 82:7–23. The physician or physician assistant would sign and finalize the tran-scribed note and attest to the accuracy of the record. Id., Ex. 65 at 116:16–117:25. The defendants are responsible for any transcription and coding errors because they had a responsibility· to confirm the accuracy of the codes they submitted to Humana and then to CMS for reimburse-ment. See Werner Decl. Ex. 12 at 184:14–185:6; ·189:1–4, 191:2–19,. 192:4–20; 345:4–6; and 346:24–347:7 (issues regarding cod-ing errors that were brought to Dr. Cava-naugh's attention and his failure to investi-

gate or correct). The defendants' failure to ensure the accuracy and correct errors of their codes as required by statute and their contract with Humana is evidence that may prove the defendants' scienter.

### e. False Diagnosis That Are Not Risk–Adjusting

CMS' risk-adjusting model changes on an annual basis. Werner Decl. Ex. 82 at 52:10–53:25. Humana regularly updated the defendants about any changes. Id. at Ex. 83. Codes that did not impact reimbursement one year may affect reimbursement the next year; if CMS deemed the codes risk-adjusting. Id. Even if the codes did not become risk-adjusting, the non-MRA codes are probative of the defendants' scienter. The more diagnoses codes assigned to a patient, the more likely statistically that a condition may be added as a risk-adjusting code. Such non-MRA code submissions may evidence a fraudulent intent to submit unsupported diagnoses to the government for reimbursement. The relator concedes that she could not recover actual damages for such non-MRA code submissions. The relator contends that the defendants would remain liable for civil penalties as to such false claims. See, e.g., United States ex rel. Hagood v. Sonoma County Water Agency, 929 F.2d 1416, 1421 (9th Cir. 1991) (finding that civil penalties may be imposed without actual damages). The undersigned agrees that although the relator may not recover actual damages for such unsupported non-MRA diagnosis codes, the defendants may be liable for civil penalties if the jury finds the defendants' had the requisite scienter. Summary judgment should be denied on this ground.

### III. Statute of Limitations

The undersigned previously rejected the defendants' statute of limitations argument that the unsupported diagnoses identified for the first time in the Third Amended Complaint ("TAC") that occurred prior to September 22, 2009, that is six years before the filing of the TAC, are barred by the six-year statute of limitations applicable to FCA claims found in 31 U.S.C. § 3731. See Report and Recommendation (DE# 342, 12/7/15); see also Order Adopting Magistrate Judge's Report and Recommendation (DE# 363, 1/5/16). For the same reasons that the undersigned found that new allegations of misdiagnoses in the TAC related back to the date of filing the initial complaint, this Court should again reject the defendants' limitations argument and find that the relator's false claims asserted in the TAC are not time-barred.

### IV. Reverse False Claims Act—"Retention of Overpayments" (Count IX)

The defendants seek summary judgment on the relator's reverse false claims act count on several grounds: 1) the claim is redundant; 2) the claim is barred as to payments received prior to May 20, 2009 on retroactivity grounds and as to payments received prior to September 22, 2009 on statute of limitations; 3) that providers cannot be liable for reverse false claims; and 4) statute of limitations grounds.

None of the grounds warrant entry of summary judgment. "[T]he purpose of a reverse false claim [under 31 U.S.C. § 3729(a)(1)(G) ] is 'not to provide a redundant basis to state a false statement claim' but to create a separate liability where there is a clear obligation to return an overpayment." United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc., 906 F.Supp.2d 1264, 1272–73 (N.D. Ga. 2012). Count IX asserts liability for the defendants' failure to return overpayments due to their unsupported diagnoses. In 2009, the statute was amended to impose liability on anyone who "knowingly conceals or knowingly and improperly avoids

or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. 3729(a)(1)(G); Kane ex rel. United States v. Healthfirst, Inc., 120 F.Supp.3d 370, 380 (S.D.N.Y. 2015). "Knowingly" is defined to include "actual knowledge of the existence of the overpayment." 31 U.S.C. 3729(b)(1)(a); 79 Fed. Reg. 29,843, 29,920 (May 23, 2014).

An "obligation" includes "an established duty, whether or not fixed, arising from an express or implied contractual … relationship, from a fee-based or similar relationship, from statute or regulation, or **from the retention of any overpayment,**" 31 U.S.C. § 3729(b)(3) (emphasis added), including "any overpayment [from Medicare] retained by a person after the deadline for reporting and returning an overpayment." 79 Fed. Reg. 29,843, 29,918 (May 23, 2014); see United States v. Crumb, No. CV 15-0655-WS-N, 2016 WL 4480690, at *16 (S.D. Ala. Aug. 24, 2016) (emphasizing that the definition of "obligation" expressly includes, among other things, "an established duty … from the retention of any overpayment"). An "overpayment" is defined as "any funds that a person receives or retains under [the Medicare and Medicaid statutes] to which the person, after applicable reconciliation, is not entitled." 42 U.S.C. § 1320a–7k(d)(4)(B).

The Patient Protection and Affordable Care Act of 2010 ("ACA") requires a person who receives an overpayment of Medicare or Medicaid funds to report and return the overpayment within 60 days of the date on which the overpayment was identified. 42 U.S.C. § 1320a–7k(d)(1)–(2). The definition of "person" includes, among others, "a provider of services" as well as a "Medicare Advantage organization." 42 U.S.C. § 1320a–7k(d)(4)(i); see also Medicare Program; Reporting and Returning of Overpayments, 81 Fed. Reg. 7654–01 ("[E]ven without this final rule, providers

and suppliers are subject to the statutory requirements found in [42 U.S.C. § 1320a–7k(d)] and could face potential [FCA] liability."). The defendants' argument that they cannot be held liable for a reverse false claim because 42 C.F.R. § 422.326 only refers to "MA organizations" attempts to transform a subsequent CMS regulation into a safe harbor from a duly enacted statute enacted by Congress. "Where a regulation conflicts with a statute, the statute controls." United States v. Marte, 356 F.3d 1336, 1341 (11th Cir. 2004); see Massachusetts v. E.P.A., 549 U.S. 497, 528–29, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007) (finding that greenhouse gases were included in the Clean Air Act's "sweeping definition" of "air pollutant," despite the EPA's more narrow interpretation). The statute includes providers like the defendants.

"[T]he sixty day clock begins ticking when the provider is put on notice of a potential overpayment, rather than the moment when an overpayment is conclusively ascertained, which is compatible with the legislative history of the FCA and the FERA." Kane ex rel. United States v. Healthfirst, Inc., 120 F.Supp.3d 370, 388 (S.D.N.Y. 2015). In United States ex rel. Keltner v. Lakeshore Medical Clinic, Ltd., No. 11-CV-00892, 2013 WL 1307013, at *4 (E.D. Wisc. March 28, 2013), the court determined that the relator "state[d] a plausible claim for relief under the amended reverse false claim provision of the FCA for overpayments withheld after May 20, 2009. The court explained that "[i]f the government overpaid defendant for … services and defendant intentionally refused to investigate the possibility that it was overpaid, it may have unlawfully avoided an obligation to pay money to the government." Id. at *4 (E.D. Wisc. March 28, 2013).

The 2014 CMS regulation implementing the 60–day provision of the ACA provides that an MAO "has identified an overpayment when [the entity] has determined, or should have determined through the exercise of reasonable diligence, that [it] has received an overpayment." 42 C.F.R. § 422.326(C); see United States v. Crumb, No. CV 15-0655-WS-N, 2016 WL 4480690, at *17 (S.D. Ala. Aug. 24. 2016). "[R]easonable diligence" includes "proactive compliance activities . . . to monitor for receipt of payments." 79 Fed. Reg. 29,843, 29, 923 (May 23, 2014).

The defendants' reliance on United States ex rel. Stone v. OmniCare, Inc., 2011 WL 2669659 (N.D. Ill. July 7, 2011), in support of their argument that the post-FERA version of the statute bars payments before it was enacted is misplaced. Stone found that the liability is triggered at "the moment a person comes to know of overpayments it is retaining." Id. at *4. Receipt of payment is not the violation, but the failure to repay once the overpayment becomes known. Id.; see also Report and Recommendation at 8–9 (DE# 342) (rejecting the retroactivity argument). The defendants argue that throughout her Third Amended Complaint ["TAC"], the relator alleges that the defendants "have engaged in conduct knowingly calculated to defraud Medicare since 2005 when she sold her practice." Plaza Reply at 8 (DE# 682, 12/1/2016) (emphasis in original). In Count IX of the TAC, the relator expressly alleges that "[a]fter the seal in this matter was partially lifted on December 2, 2011, Plaza Medical Centers, Corp., was notified of the false, unsupported, and erroneous diagnoses alleged in paragraphs 39(a)-(bb) supra." Third Amended Complaint at ¶ 133 (DE# 277, 9/22/15).

Additionally, throughout 2010 and 2011, Plaza Medical Centers submitted "Condition and Error Reports" to Humana for certain erroneous codes, which previously had been submitted by Humana to CMS. AMF ¶ 35. Paragraph 35 of the relator's Additional Material Facts cites Exhibit 35 to Mr. Werner's Declaration and paragraphs 15 through 17 of Mr. Farber's Declaration as well as Exhibit 2 thereto. Exhibit 2 is a spreadsheet created by Mr. Farber that contains information from Plaza Medical Center's Condition and Error ("C&E") Reports that it provided to Humana to notify Humana that a certain diagnosis code for a given patient was reported to Humana in error. The evidence in the record presents a fact question for a reasonable jury to determine whether the defendants had knowledge of and knowingly retained overpayments for improper diagnostic codes that were provided to Humana and subsequently submitted to CMS for reimbursement after the reverse false claims statute was enacted. The Court should deny the defendants' summary judgment motion as to Count IX (Reverse False Claims).

## CONCLUSION

The undersigned finds that the record evidence presents genuine issues of material fact for a jury to determine whether the relator can prove the elements to establish the defendants' liability under the FCA and the reverse false claims provision. Because there is sufficient evidence in the record upon which a reasonable jury could find for the non-moving party, the relator, this Court should deny the defendant's motion for summary judgment.

## RECOMMENDATION

Based on the foregoing, the undersigned respectfully RECOMMENDS that: the Defendant Dr. Michael Cavanaugh's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 622, 10/27/16) be DENIED; the Defendant Plaza Medical Centers, Corp.'s Motion for

Summary Judgment and Incorporated Memorandum of Law (DE# 624, 10/27/17) be DENIED; and that the relator's Motion to Strike Declaration of Angel Spencer (DE# 651, 11/14/16) be DENIED as moot.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this 27th day of February, 2017.